**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS

SHENGJIE CHENG                               25-95-SDD-SDJ
a.k.a "Marvellous Pirate"

<u>**RULING**</u>

This matter is before the Court on a *Motion to Dismiss the Indictment Pursuant to Federal Rule of Criminal Procedure 12(b) for Selective Prosecution and Request for Evidentiary Hearing*[1] filed by Shengjie Cheng ("Defendant").  The Government has filed a Response,[2] to which Defendant filed a Reply.[3]  For the reasons that follow, Defendant's motion and request for an evidentiary hearing are DENIED.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Defendant, a Chinese national lawfully present in the United States on a student visa, is charged via indictment with one count of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b).[4]  It is alleged that, on March 31, 2025, Defendant engaged in explicit online communications (by way of a dating app) with an individual whom he believed to be a fifteen year old girl.  The profile he was communicating with, however, had been created and was being controlled by an undercover Homeland Security Investigations ("HSI") agent as part of a coordinated sting operation with local

---

[1] Rec. Doc. 28.
[2] Rec. Doc. 29.
[3] Rec. Doc. 30.
[4] Rec. Doc. 1, p. 1.

1

law enforcement.   Sometime during their digital conversation, Defendant allegedly expressed a clear desire to have sex with the purportedly underage girl and arranged to meet with her later that same day.

Upon arriving at a pre-determined meeting location and briefly interacting with the undercover HSI agent, whom he still believed to be an underage girl, Defendant was arrested by deputies from the Livingston Parish Sherrif's Office.   He was subsequently charged with violations of La. R.S. §14:81 (Indecent Behavior with a Juvenile) and §14:81.3 (Computer Aided Solicitation of a Minor), charges for which prosecution is currently pending before the 21st Judicial District Court.   As a result of the sting operation, Defendant states that twenty-two individuals, in all, were arrested and subject to prosecution in Louisiana state court for the same or substantially similar crimes.[5]

The present dispute arises from Defendant's contention that, of those twenty-two individuals arrested and subsequently charged by state authorities, he is one of only two that have been indicted in the Middle District of Louisiana—and the only one of Asian descent.   Accordingly, he moves this Court to dismiss the indictment on grounds that he is being selectively prosecuted because of his race and/or nationality.[6]

## II.    LAW AND ANALYSIS

The government generally enjoys broad discretion in determining who to prosecute.[7]   That discretion, however, is constrained by the equal protection component of the Fifth Amendment's Due Process Clause, which prohibits prosecutorial decisions

---

[5] The government does not explicitly concede this fact, but does not appear to dispute its accuracy for purposes of this proceeding.   *See* Rec. Doc. 29, p. 6-7.
[6] Rec. Doc. 28-1, p. 3.
[7] *Jackson v. City of Hearne, Tex*, 959 F.3d 194, 201 (5th Cir. 2020) (internal citations omitted).

based on unjustifiable standards such as race, religion, or other arbitrary classifications.[8] Certainly, under this principle, prosecutorial decisions based on nationality or national origin are clearly prohibited.[9]

To prevail on a selective prosecution challenge, a defendant must satisfy a two-prong test. First, "a defendant must make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not."[10] Second, the defendant "must show that the government's discriminatory selection of [him] for prosecution was invidious or done in bad faith—i.e., that the government selected its course of prosecution because of, rather than in spite of, its adverse effect upon an identifiable group."[11] Given the wide latitude afforded prosecutors over their charging decisions and the presumption that criminal prosecutions are undertaken in good faith, "defendants bear a very heavy burden" to establish an invidious purpose.[12] That said, if a defendant fulfills both prongs, then the burden shifts to the government to demonstrate a legitimate basis for selecting the defendant for prosecution.[13]

Importantly, "a defendant is not automatically entitled to an evidentiary hearing to make the required showing" of selective prosecution.[14] He must first present facts "sufficient to create a reasonable doubt about the constitutionality of [his] prosecution."[15]

---

[8] *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citations omitted) (hereinafter "*Armstrong*").

[9] See *United States v. Al Jibori*, 90 F.3d 22, 25 (2nd Cir. 1996) ("The dispute here is not grounded in whether it is unconstitutionally arbitrary to use an accused's national origin as the sole basis for selecting him for prosecution-the government agrees that this would be an improper basis for government action….").

[10] *United States v. Hoover*, 727 F.2d 387, 389 (5th Cir. 1984).

[11] *Jackson*, 959 F.3d at 201 (quoting *United States v. Sparks*, 2 F.3d 574, 580 (5th Cir. 1993)).

[12] *United States v. Ryan*, 619 F. Supp. 3d 581, 591 (E.D. La. 2022) (internal citations omitted).

[13] *Hoover*, 727 F.2d at 389.

[14] *United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998).

[15] *Id*.

Accordingly, the Court now turns to whether Defendant has set forth a colorable claim of selective prosecution as would entitle him to an evidentiary hearing on the issue.

As to the first prong of selective prosecution, Defendant argues that the other twenty-one individuals arrested as part of the March 2025 sting operation "are 'similarly situated' individuals" and that nothing in the discovery materials provided supports a decision "to prosecute only [him] and not the others."[16]  He contends that his selection for prosecution was especially improper considering the conduct of several other arrestees was "significantly worse" than his own.[17]  The government responds that "the mere exercise of some selectivity by the government in instituting prosecutions is not in itself prohibited by the constitution."[18]  It further argues that Defendant has failed to show the other twenty-one arrestees committed their crimes in "substantially the same manner" as he did, as is required to show that they are similarly situated.[19]  The government points to specific examples of Defendant's conduct on March 31, including the content of his messages and in-person advances towards the undercover HSI agent, emphasizing the absence of a showing that the other arrestees "committed similar conduct."[20]

Contrary to what the parties' briefing might suggest, however, the Court need not decide whether the Defendant's actions were so distinct from the other arrestees that they could not be similarly situated for purposes of a selective prosecution analysis.  That is because the legal term "similarly situated" means that a defendant and his unprosecuted

---

[16] Rec. Doc. 28-1, p. 4.

[17] *Id*. at p. 5 (referencing two other arrestees who are registered sex offenders, *citing* 25-FELN-050262 and 25-FELN-05245, and another who brought a loaded gun inside the "sting house," *citing* 25-FELN-050252).

[18] Rec. Doc. 29, p. 7 (citing *Hoover*, 727 F.2d at 389).

[19] *Id*.

[20] *Id*. at 7-8.

comparators are "in <u>all</u> relevant aspects alike."[21] In other words, individuals "are similarly-situated when [their] 'circumstances present *no distinguishable legitimate prosecutorial factors* that might justify making different prosecutorial decisions with respect to them.'"[22] "Determining whether a plaintiff is similarly situated to those not prosecuted will be a fact-intensive and case-specific comparative inquiry" and may take into account factors such as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan."[23] As the parties acknowledge, the manner in which Defendant is alleged to have carried out his criminal act, and how it compares to the conduct of the comparator arrestees, is one factor to be considered in this calculus.

Be that as it may, when exercising its prosecutorial discretion, the government may properly take into account the penalties available upon conviction of a particular defendant.[24] Unlike the purported comparators, Defendant holds a student visa which expressly prohibits him from engaging in "criminal activity,"[25] and his residency status would be subject to change following "conviction…for a crime of violence for which a sentence of more than one year imprisonment may be imposed."[26] A conviction in this case will therefore almost certainly subject Defendant to consequences not faced by the

---

[21] *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 978 (5th Cir. 2022) (internal quotation marks and citation omitted) (emphasis added).

[22] *Jackson v. City of Hearne*, No. 18-15, 2019 WL 13301706, at *5 (W.D. Tex. Jun. 17, 2019) (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)), aff'd, 959 F.3d 194 (5th Cir. 2020) (emphasis added)..

[23] *Wayte v. United States*, 470 U.S. 598, 607 (1985).

[24] *United States v. Jacobs*, 4 F.3d 603, 604 (8th Cir. 1993) (citing *United States v. Batchelder*, 442 U.S. 114, 125 (1979)).

[25] 8 C.F.R. § 214.2(e)-(g); *see Saxena v. Noem*, No. 525-5035, 2026 WL 84248, at *2 (D.S.D. Jan. 12, 2026) (noting that "nonimmigrant visa-holders, such as students with F-1 visas, must refrain from certain specified activity to maintain their lawful visa status" such that they "are prohibited from engaging in … criminal activity.") (internal citations omitted); *Isserdasani v. Noem*, No. 25-283, 2025 WL 1118626, at *1 (W.D. Wisc. Apr. 15, 2025) (stating same).

[26] 8 C.F.R. § 214.1(g).

purported comparators.[27]    Importantly, Defendant does not contend that among the comparator arrestees there is another visa holder (student or otherwise) from a country other than China (or who is not of Asian descent) who, despite being subject to the same visa consequences as Defendant, went unprosecuted.  Were that the case, the Court would be more inclined to closely scrutinize the government's decision to prosecute the nationals of some countries but not others—and more specifically whether that decision was inspired by an improper consideration, such as race or nationality.  But to the extent the other arrestees would not be subject to the same nature of penalties as Defendant for the conduct alleged, that is not the case presented here.[28]  The Court therefore concludes that, under the equal protection principles which underlie his selective prosecution theory, Defendant is not similarly situated with the comparator, unprosecuted arrestees.[29]

Moreover, because the Defendant is a student visa holder, it is clear that the government's decision to prosecute him serves distinct enforcement priorities and yields

---

[27] While 8 C.F.R § 214.1 (g) does not define "crime of violence," the Immigration Naturalization Act—under which that regulation is promulgated—defines that term with reference to 18 U.S.C. § 16.  *See Mateo v. Attorney General of the United States*, 870 F.3d 228, 230 (3rd Cir. 2017).  Relevant here, the latter statute's definition for a "crime of violence" is verbatim the one found in 18 U.S.C. § 3156, under which the *attempted coercion and enticement of a minor* in violation of 18 U.S.C. § 2422 (b) has been held to qualify.  *See*, *e.g.*, *United States v. Zupnik*, No. 16-50110, 2019 WL 2422605, at *1 (D.S.D. Jun. 10, 2019) ("Attempted enticement of a minor using the internet under 18 U.S.C.  2422(b) is a crime of violence") (internal citations omitted); *United States v. Drake*, No. 119-402, 2021 WL 1600485, at *1 (Apr. 23, 2021); *see also United States v. Little*, 485 F.3d 1210, 1211 (8th Cir. 2007) (recognizing coercion and enticement of a minor is a crime of violence); *United States v. Munro*, 394 F.3d 865, 870-71 (10th Cir. 2005) (same).

[28] *See generally Gonzalez v. United States*, No. 397-859, 1998 WL 740833, at *2 (D. Conn. Oct. 12, 1998) (citing *United States v. Young*, 143 F.3d 740, 743 (2d. Cir. 1998) (noting that a "[p]etitioner ha[d] not stated an equal protection claim because noncitizen, deportable defendants are not similarly situated to defendants who are citizens of the United States.").

[29] The Court, having conducted an independent search, has not located a case in which an arrestee's immigration status defeats the 'similarly situated' prong of their selective prosecution claim.  However, cases so concluding because of an arrestee's criminal history subjecting them to a different (and often more severe) punishment provide an appropriate analog. *See United States v. Jones*, 399 F.3d 640, 646 (6th Cir. 2005); *United States v. Dudley*, No. 15-34, 2016 WL 1398489, at *3 (E.D. Ky. Mar. 8, 2016) ("In order for Defendant to demonstrate that similarly situated individuals were prosecuted differently based on race, he would have to show that non-black individuals with a similar criminal history…were not subject to federal prosecution.").

unique deterrence value—neither of which would be furthered by prosecuting citizens whose conviction would touch upon no federal interest other than the general reduction and deterrence of crimes against minors.  Indeed, the government is free to focus its prosecutorial energies on (1) ensuring the nonimmigrants it has allowed into the country on student visas obey the laws of all United States jurisdictions and (2) deterring those who may attempt otherwise.  Because the Defendant has not shown that a non-Chinese arrestee *who is subject to the same immigration consequences* as him was culpable for the same offense but went unprosecuted, he has failed to satisfy the requirement to show a similarly situated comparator under a selective prosecution theory.  Therefore, the Court finds no basis to reasonably doubt the constitutionality of the present prosecution.[30]

### III.     CONCLUSION

For the reasons provided, Defendant's *Motion to Dismiss the Indictment and Request for an Evidentiary Hearing*[31] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 30th day of _____April_____, 2025.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[30] The Court's ruling is further supported by the fact that, according to Defendant, the only other arrestee subject to federal prosecution following the sting operation was a Venezuelan national who is in the United States unlawfully.  Rec. Doc. 28-1, p. 3.
[31] Rec. Doc. 28.